ARCHER & GREINER, P.C.
1025 Laurel Oak Rd.
Voorhees, NJ 08043
(856) 616-2681
Attorneys for Plaintiff, Jersey Shore Beach & Boardwalk, Inc.

BY: TREVOR J. COONEY, ESQUIRE (I.D. #035142000)

| | |
|---|---|
| JERSEY SHORE BEACH & BOARDWALK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AXIS SURPLUS INSURANCE COMPANY and LANDMARK AMERICAN INSURANCE COMPANY,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MONMOUTH COUNTY<br><br>CIVIL ACTION<br><br>DOCKET NO.: |

**COMPLAINT**

Plaintiff Jersey Shore Beach & Boardwalk, Inc. ("Plaintiff" or "JSBB"), by way of Complaint against Defendants AXIS Surplus Insurance Company ("AXIS") and Landmark American Insurance Company ("Landmark" and, collectively, "Defendants" or "Insurers"), states as follows:

**THE PARTIES**

1. JSBB is New Jersey corporation with a principal place of business located at 275 Beachway, Keansburg, NJ 07734.

2. Upon information and belief, AXIS is a non-admitted surplus lines insurer that sells policies throughout the United States, including in the State of New Jersey. AXIS maintains a principal place of business located at 233 Wacker Drive, Suite 4930, Chicago, IL 60606.

3. Upon information and belief, Landmark is a New Hampshire-domiciled specialty

insurer operating on a non-admitted or "surplus lines" basis and sells insurance policies throughout the United States, including in the State of New Jersey. Landmark maintains a principal place of business located at 10000 Avalon Blvd., Alpharetta, GA 30009.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action because JSBB maintains its principal place of business in New Jersey and the events giving rise to this action occurred in New Jersey, as set forth in detail below. Further, at all times relevant to the allegations in this Complaint, Defendants conducted business within the State of New Jersey, including engaging in the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders, property, and/or activities located in New Jersey.

5. Venue is proper in this County because JSBB maintains its principal place of business in this County and the property loss at issue occurred at the Keansburg Fishing Pier located at 275 Beachway, Keansburg, NJ 07734 (the "Pier").

## FACTUAL BACKGROUND

### The Policy

6. AXIS issued a Property Insurance Policy to JSBB for the period August 31, 2025 to August 31, 2026, bearing Policy No. P-001-000129910-02 (the "Policy").

7. As reflected in the Quota Share Schedule, the Policy is a quota share property insurance policy with AXIS and Landmark each severally providing a proportionate 50% share of coverage.

8. The Policy's quota share program provides a 100% per occurrence policy limit of $6,741,625 with a $10,000 per occurrence deductible.

9. Upon information and belief, pursuant to the "Warranty Schedule" and "Warranty

Coverage Form" found in the Landmark policy, Landmark effectively follows the terms and conditions of the Policy.

10. The Policy's Property Damage Insuring Agreement states, in relevant part, as follows:

> A. **COVERAGE**
>
> We will pay for direct physical loss of or damage to **covered property** at an **insured location** caused by or resulting from any **covered cause of loss.**

11. **Covered cause of loss** is defined in the Policy to mean "direct physical loss unless the loss is excluded or limited in this policy."

12. As used in the Policy, **covered property** means:

> 1. **Real Property;**
> 2. Your **business personal property** located in or on **real property** (or in a vehicle) within 100 feet of the real property or within 100 feet of **an insured location** whichever is greater,
>
> but only if the **real property** and the **business personal property** is listed on the most recent Schedule of Values submitted to us in connection with this property....

13. The Insurers have acknowledged that the Pier was added to the Policy's Statement of Values in 2015 and is scheduled with a Building Value of $700,000. Thus, the Pier constitutes **covered property** under the Policy.

14. The Policy contains the following Exclusions relied on by the Insurers, but which JSBB denies are applicable to the Loss at issue:

**A. Excluded Perils Subject to Concurrent Causation Provision**

Except to the extent coverage is provided under any Additional coverage, we will not pay for loss or damage caused directly or indirectly by any of the following, regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

***

**Water**

1. **Flood**, surface water, waves (including tidal waves and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind;

2. Mudslide or mudflow;

3. Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

4. Water under the ground surface pressing on, or flowing or seeping through:

   a. Foundations, walls, floors or paved surfaces;

   b. Basements, whether paved or not; or

   c. Doors, windows or other openings; or

5. Waterborne material carried or otherwise moved by any of the water referred to in Paragraph 1, 3 or 4, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above is caused by an act of nature or is otherwise caused.

But if any of the above results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a **covered cause of loss**);

**B. Other Exclusions**

We will not pay for loss or damage caused by or resulting from any of the following:

***

**Collapse**

Collapse, including any of the following conditions of property or any part of the property:

1. An abrupt falling down or caving in;

2. Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in;

3. Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to 1. or 2. above; or

4. **Sinkhole collapse**.

But if collapse results in a **covered cause of loss** at the **insured location,** we will pay for the loss or damage caused by that **covered cause of loss.**

**<u>The Loss</u>**

15. On or about February 3, 2026, JSBB suffered a direct physical loss to the Pier, resulting in significant damage to approximately 1/3 to 1/4 of the Pier and abrasions to pilings closer to the shore (collectively, the "Loss").

**<u>JSBB's Tender and the Insurers' Denial of Coverage.</u>**

16. JSBB promptly tendered a claim for the Loss to the Insurers and requested coverage under the Policy.

17. The Insurers engaged Engle Martin & Associates ("Engle Martin") to investigate and adjust the claim.

18. Upon information and belief, Engle Martin retained Marine Specialties Ltd ("MSL") to perform a site visit and inspect the Loss.

19. Upon information and belief, MSL in turn retained Anthony Johnson, a certified consulting meteorologist, to "identify, analyze, and explain the meteorological and related

environmental conditions bearing on the partial collapse of the [Pier]…."

20. Mr. Johnson issued a report dated March 23, 2026 (the "Johnson Report"), in which he expressed the following Summary Opinion[1]:

> In summary, the available meteorological, hydrological, and satellite evidence supports the conclusion that the partial pier collapse ***resulted from sustained local ice loading and aligned northwest wind-driven currents*** during a period of exceptional cold, ***<u>rather than</u> from storm surge, abnormal tides, or a single wave-impact event.*** [emphasis added].

21. On April 6, 2026, Engle Martin, on behalf of the Insurers, issued a letter to JSBB denying coverage for the Loss, contending that the Loss was barred by the Policy's exclusions for "Water" and "Collapse" (hereinafter, the "Water Exclusion" and "Collapse Exclusion", respectively).

22. The Insurers first concluded that the chunks of ice in the Raritan Bay that purportedly caused the Loss constitute "surface water", as that undefined term is used in the Water Exclusion.

23. In the alternative, the Insurers concluded that, in the event the subject ice would not be deemed "surface water", it would constitute "waterborne material", as that undefined term is used in the Water Exclusion.

24. Also in the alternative, the Insurers concluded that the Loss was caused, at least in part, by "waves" and/or "tides", as those undefined terms are used in the Water Exclusion.

25. Separately, the Insurers concluded that the collapse of the Pier was caused by an initial loss of structural integrity, which led to an abrupt collapse, and, thus, the Collapse

---

[1] In referencing the Johnson Report, JSBB is not adopting or acknowledging the accuracy of its findings.

Exclusion precluded coverage.

26. The foregoing bases for the Insurers' denial are belied and contradicted by the Johnson Report.

27. The Johnson Report concluded that the Loss "resulted from sustained local ice loading and aligned northwest wind-driven currents during a period of exceptional cold, ***rather than*** from storm surge, abnormal tides, or a single wave-impact event." [emphasis added].

28. The Johnson Report does not attribute the Loss causation to any types of "water" referred to in Paragraph 1, 3 or 4 of the Water Exclusion – *i.e.*, "flood, surface water, waves [], tides, tidal water, overflow of any body of water", etc.

29. Moreover, the Collapse Exclusion is inapplicable because there was neither an "abrupt falling down or caving in" nor a "loss of structural integrity" within the meaning of the Exclusion.

30. Rather, the Johnson Report concluded that "[t]he pier did ***not*** fail in a single sudden event. The evidence supports a gradual structural weakening and partial collapse overnight between February 2 and February 3, 2026, ***as repeated ice and current forces continued to act on the structure***." [emphasis added].

31. Alternatively, New Jersey applies the "efficient proximate cause" approach, pursuant to which coverage is found where the covered risk was either the first or last step in the chain of causation which leads to the loss. Thus, where two or more identifiable causes - one a covered event and one excluded - may contribute to a single property loss, there is coverage absent an anti-concurrent or anti-sequential clause in the policy."

32. Here, the Collapse exclusion in the Policy is not preceded by any anti-concurrent/anti-sequential language.

33. The Johnson Report concluded that the partial collapse "was caused by the combined effects of extreme cold, coastal ice development in western Raritan Bay, and persistent northwest winds and currents acting on the structure over several days," and that "the failure resulted from prolonged environmental loading acting in the same direction over multiple days."

34. The Johnson Report attributes the Loss to "sustained local ice loading and aligned northwest wind-driven currents during a period of exceptional cold."

35. The efficient proximate cause of the Loss is therefore the extreme-cold weather event, a covered peril under the all-risk Policy. The alleged "collapse" of the Pier was the terminal consequence of that sustained, covered peril, not an independent, freestanding cause.

36. Because a covered peril is the efficient proximate cause, the Collapse Exclusion cannot bar coverage.

37. In a May 18, 2026 letter, JSBB demanded that the Insurers reconsider their flawed coverage position and promptly acknowledge their obligation to fully cover the Loss.

38. In a June 15, 2026 letter from its coverage counsel, the Insurers maintained their coverage position.

39. As a result of the Insurer's wrongful denial of coverage, JSBB has been damaged.

## FIRST COUNT

### Declaratory Judgment

40. JSBB repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

41. As a result of the facts, conditions and circumstances set forth above, there exists an actual and justiciable controversy between JSBB and the Insurers regarding the existence and scope of coverage under the Policy for the Loss.

42. The Declaratory Judgment Act, N.J.S.A. 2A:16-51 *et seq*., authorizes this Court to declare rights, status and other legal relations so as to afford litigants relief from uncertainty and insecurity.

43. Under New Jersey law, coverage provisions are to be read broadly, exclusions are to be read narrowly, potential ambiguities must be resolved in favor of the insured, and the policy is to be read in a manner that fulfills the insured's reasonable expectations.

44. The Insurers also owe a fiduciary duty under the Policy to deal with JSBB fairly, effectively and in good faith.

45. The Policy is an all-risk policy, which means that coverage exists for direct physical loss to **covered property** unless it is specifically excluded.

46. The Pier constitutes **covered property** under the Policy.

47. On or about February 3, 2026, JSBB suffered a direct physical loss to the Pier.

48. The Insurers have improperly denied coverage for the Loss based on the Policy's Water Exclusion and Collapse Exclusion.

49. As set forth above, the Policy's Water Exclusion and Collapse Exclusion are not applicable to the Loss.

50. JSBB is entitled to a declaration of its rights to coverage under the Policy.

**WHEREFORE,** JSBB demands judgment against the Insurers as follows:

(a) A declaration that the Insurers are obligated to provide coverage for the Loss;

(b) For reimbursement of JSBB's attorney's fees and costs; and

(c) For such other and further relief as the Court may deem just and proper.

## SECOND COUNT

**(Bad Faith)**

51. JSBB repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

52. By its aforesaid actions and omissions, *inter alia*, the Insurers have failed (and continue to fail) to deal fairly and in good faith with JSBB by refusing, without proper cause, to provide coverage under the Policy.

53. The Insurers have improperly relied on Policy exclusions that they know or should know are inapplicable to the Loss and which are contradicted by the findings of their own consultants.

54. The Insurers have denied coverage under the Policy without a fairly debatable basis.

55. The Insurers knew or recklessly disregarded the lack of a fairly debatable basis for denying coverage.

56. The Insurers' actions constitute bad faith.

**WHEREFORE,** JSBB demands judgment against the Insurers, jointly and severally, for:

(a) compensatory and consequential damages;

(b) punitive damages;

(c) pre-judgment and post-judgment interest;

(d) attorneys' fees, expenses and costs; and

(e) such other and further relief as the Court may deem just and proper.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to the provisions of Rule 4:25-4, Trevor J. Cooney, Esquire, is hereby designated as trial counsel for JSBB.

Respectfully submitted,

Dated: September 22, 2026

*s/ TREVOR J. COONEY*
TREVOR J. COONEY
Archer & Greiner, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08043
(856) 616-2681
tcooney@archerlaw.com

Attorneys for Plaintiff, Jersey Shore Beach
& Boardwalk, Inc.

## CERTIFICATIONS

The undersigned hereby certifies pursuant to *Rule* 4:5-1 that the matter in controversy is not the subject of any other Complaint pending in any Court or of any pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and I am not aware of any other person who should be joined in this matter.

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: September 22, 2026

*s/ TREVOR J. COONEY*
TREVOR J. COONEY
Archer & Greiner, P.C.
1025 Laurel Oak Rd.
Voorhees, NJ 08043
856.616.2681
tcooney@archerlaw.com

232397974 v2

# Civil Case Information Statement

**Case Details: MONMOUTH | Civil Part Docket# L-003767-26**

**Case Caption:** JERSEY SHORE BEACH & BOARDWAL VS AXIS SURPLUS I
**Case Initiation Date:** 09/22/2026
**Attorney Name:** TREVOR JAMES COONEY
**Firm Name:** ARCHER & GREINER PC
**Address:** 1025 LAUREL OAK RD
VOORHEES NJ 08043
**Phone:** 8567952121
**Name of Party:** PLAINTIFF : JERSEY SHORE BEACH & BOARDWALK
**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
**Document Type:** Complaint
**Jury Demand:** NONE
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: JERSEY SHORE BEACH & BOARDWALK?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Other(explain) INSURED-INSURERS

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/22/2026
Dated

/s/ TREVOR JAMES COONEY
Signed

MONMOUTH COUNTY
SUPERIOR COURT
PO BOX 1270
FREEHOLD NJ 07728

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 358-8700
COURT HOURS 8:30 AM - 4:30 PM

DATE: SEPTEMBER 22, 2026
RE: JERSEY SHORE BEACH & BOARDWAL VS AXIS SURPLUS I
DOCKET: MON L -003767 26

THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 1.

DISCOVERY IS 150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS: HON NATALIE S. WATSON

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM 004 AT: (732) 358-8700 EXT 87194.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.

PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE WITH R.4:5A-2.

ATTENTION:

ATT: TREVOR J. COONEY
ARCHER & GREINER PC
1025 LAUREL OAK RD
VOORHEES NJ 08043

ECOURTS